# HORACE B. HANCOCK v. STATE.

No. A-10372.    Feb. 7, 1945.

(156 P. 2d 155.)

2

R. Place Montgomery, of Hobart, for plaintiff in error.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and David L. Field and Gerald Watts, Co. Atty., both of Hobart, for defendant in error.

BAREFOOT, P. J. Defendant, Horace B. Hancock, was charged in the county court of Kiowa county with the crime of driving an automobile upon the public highway while under the influence of intoxicating liquor, was tried, convicted and sentenced to pay a fine of $250, and has appealed.

For reversal of this case, it is contended:

"1. The information in this case is demurrable.

"2. The state's evidence was illegally obtained and the defendant illegally arrested, and it was error to admit evidence relating thereto.

"3. The evidence is insufficient to sustain the conviction.

"4. The punishment assessed is excessive."

As to the first assignment of error, it may be stated that defendant was charged with the violation of 47 O. S. 1941 § 93, which is as follows:

"It shall be unlawful for any person who is under the influence of intoxicating liquor, or who is an habitual user of veronal, barbital, nembutal, sodium-amatal, or other barbitrate, or barbituric acid preparations, chloralhydrate, bromidia, benzedrine, or amphetamine preparations, or narcotic drugs, to operate or drive a motor vehicle on any highway within this State, as defined in Section 1, of this Act (Sec. 91 of this Title) and any person violating the provisions of this Section shall be deemed guilty of a misdemeanor for the first offense and upon conviction therefor shall be punished by imprisonment in the county jail for a period of time not to exceed one (1) year, or by a fine of not more than Five Hundred ($500.00) Dollars or

by both such fine and imprisonment. Any person found guilty of a second offense under the provisions of this Act shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment in the State Penitentiary for a period of time not to exceed two (2) years or a fine of not more than One Thousand ($1,000.00) Dollars or by both such fine and imprisonment."

The charging part of the information was as follows:

". . . he the said Horace B. Hancock then and there being, did then and there unlawfully, wilfully, wrongfully and intentionally drive, operate, and propel a certain motor vehicle, being a 1941 Chevrolet Five-passenger coupe, 1941 Oklahoma Tag No. 26-1866, upon and over the Hobart City Route of State Highway No. 9, from a point unknown in Kiowa County, Oklahoma, to a point on said State Highway No. 9, at approximately one mile east of the city of Hobart, Kiowa County, Oklahoma, while he, the said Horace B. Hancock, was under the influence of intoxicating liquor, . . . "

It is contended that the information is "both duplicitous and insufficient to state the offense sought to be charged."

The contention that it is duplicitous is that it may charge the crime of reckless driving as well as driving while under the influence of intoxicating liquor.

A careful reading of the information is the best answer to this contention. There is nothing therein which charges the defendant with driving a motor vehicle in a careless or reckless manner, or with the violation of any other rule of the road. It only charges one offense, that of "driving an automobile upon a public highway while under the influence of intoxicating liquor." It is neither duplicitous nor does it fail to state an offense under the statute above quoted.

The second and third assignments of error may be considered together, and necessitate a short review of the evidence.

On the afternoon of January 21, 1941, defendant had driven in his automobile from his home in the city of Hobart, Kiowa county, to the country, and was returning home on State Highway No. 9, east of Hobart. While driving west, upon said highway, he met a car traveling east. Immediately behind this car, and traveling in the same direction, was a state patrol car, containing Patrol Officers Archie L. Bird and E. N. Haynes. Defendant's wife and R. B. Crigger, a farmer, were riding with him. As the cars were meeting, the officers in the patrol car noticed that defendant was driving to the south of the center line of the highway, and that he forced the car in front of them to swerve to the right to avoid a collision. They also had to swerve the patrol car to keep from being struck by defendant's car. They immediately stopped, turned around and followed the car of defendant. After going about a quarter of a mile, they sounded the siren and stopped defendant. Upon reaching his car, they observed that defendant was drunk, or under the influence of intoxicating liquor. After some words, in which defendant demanded to know why he was being arrested, he was taken from his car and placed in the patrol car, and one of the officers drove his car. Immediately upon defendant being taken from his car, the officers placed handcuffs upon him. He was taken in to Hobart, and placed in the custody of the sheriff of Kiowa county. Both of the patrol officers testified that defendant was drunk and under the influence of intoxicating liquor. Their evidence on this point was as follows:

Archie L. Bird:

"A. No, I walked up first to the left side of the car and talked to the defendant. He spoke to me, and I asked him his name, and found out he was drunk, and opened the door and asked him to get out. He didn't do it, wouldn't do it. Finally I got hold of his arm and got him out, and he still was objecting to getting in the patrol car, and I took out the handcuffs and put them on him, and my partner, Ed Haynes, took him back to the patrol car and brought him to jail, and I drove his car. Q. That is, you brought his car and other occupants on in to town? A. Yes, sir. Q. Did you talk to the defendant after he was brought into the jail? A. Yes, we had a little conversation, not much. Q. Approximately how long were you with him after you brought him in to the jail? A. After he was in jail? Q. Yes. A. Oh, approximately 15 or 20 minutes. Q. And what was his condition at that time? Was it any different than it was in the automobile? A. No, he was still drunk."

And Officer E. N. Haynes:

"Q. What was his condition at that time? A. He was in a drunken condition; smelled strong of alcohol and could not walk without assistance from his vehicle to the patrol car. Q. Did you give him that assistance, or did Mr. Bird? A. I gave him the assistance."

Others who testified as to his condition immediately following his arrest were W. P. Dugan, Sheriff of Kiowa county, who testified as follows:

"Q. What was his condition at the time you first saw him and talked with him, with reference to being intoxicated? A. Well, he was drinking. Q. Would you say that he was under the influence of intoxicating liquor? A. Yes, I believe I would. Q. To such a degree as to impair his ability to conduct himself? A. Well, he would walk all right. Q. Was his talk impaired? Did he follow a line of thought? A. He wasn't talking very much."

Deputy Sheriff J. M. White:

"Q. State to this jury his condition at that time with reference to being—whether or not he was under the influence of intoxicating liquor? A. He was. Q. In what degree, John? (An objection is overruled) A. Oh Pony was pretty drunk."

Constable Tom Overstreet:

"Q. How long did you stay there, would you say? A. I was there probably 30 minutes. Q. What would you say with reference to the defendant's condition at that time with reference to being intoxicated. A. At that time his speech was just a little broken was about all. His tongue seemed to be just a little thick where he couldn't handle his speech like he should. Q. Was he sitting in a chair at the time you were there? A. He was sitting in a chair on the east end of the office."

Deputy Sheriff Mitch Hill did not see the defendant until he had been in jail for approximately five hours. He testified:

"Q. What would you say with reference to his condition at that time? A. He seemed to me like he was all right then. Q. Could you state whether or not you smelled intoxicating liquor upon his person? A. I smelled his breath, yes."

Defendant testified that he was not under the influence of intoxicating liquor at the time, but with reference to drinking during the afternoon, he said:

"Q. Had you had a drink that day? A. Yes, sir. Q. Where did you take a drink, and under what circumstances? Tell the jury. A. We had walked over this mountain, up one canyon and down another one and back up, and I fell and hurt my leg. When we got back to the car—I have a crippled leg, and I have medicine to take all the time for it, and I took two of these pills and used the whisky to wash them down with. Q. You had the whisky there with you? A. Yes, sir. Q. * * * Was you drunk at

all, or under the influence of intoxicating liquor? A. I was not drunk."

Defendant testified that he took the two pills which he washed down with the whisky, about two hours prior to his arrest.

He also testified to having served two years as deputy sheriff of Kiowa county some years previous to his arrest.

Dr. B. H. Watkins, defendant's physician, testified with reference to the defendant being under his care, and that the taking of the two pills described, two hours previous to his arrest, would have a tendency to make him groggy, without the whisky.

Mr. Crigger, who was with the defendant during the afternoon, testified that in his opinion defendant was not under the influence of intoxicating liquor, and Mr. Bay Lyde testified that he had passed defendant's automobile just prior to his arrest, and that he was driving in a careful manner and he could not observe that he was under the influence of liquor.

It is contended by the defendant that under the above statement of facts his arrest was illegal, and evidence with reference thereto was inadmissible.

This contention is based upon the fact that the patrol officers did not have a warrant for defendant's arrest at the time he was stopped upon the public highway, and that a crime was not committed in their presence which justified his arrest.

To support this contention certain cases are cited in which this court has held that officers cannot stop an automobile upon the public highway under suspicion and search the same for intoxicating liquor.

8

It may be definitely stated that the facts in those cases are not identical with the facts in the instant case. Here the officers saw the car of defendant being driven in a manner that was clearly a violation of the rules of the road as provided by the statutes of this state. 69 O. S. 1941 § 583. This was being done to such an extent that it caused them to stop their car, turn around and pursue the car of defendant. Of course they did not know at that time that defendant was drunk or under the influence of liquor. It was only after they apprehended him that they made this discovery. If they had found that he was not under the influence of intoxicating liquor, they might have cautioned him, without arrest, although they would have had the right under the law to arrest him for a violation of the rules of the road, as prescribed by the statute.

For this court to hold that under the circumstances as revealed by the record in this case, the officers did not have the right to stop an automobile upon the public highway for the purpose of caution, or arrest, for a violation of the law, without first having a search warrant, or a warrant of arrest, would nullify the law and make the enforcement thereof a farce. To so hold would mean that one in an intoxicated condition driving an automobile in a manner dangerous and hazardous to the safety and lives of the general public, could not be stopped until in all probability he had committed irreparable damage to persons or property. The law above quoted was enacted for the protection of the lives and property of those who travel upon the public highways. Officers are elected and appointed to enforce the law. It is their sworn and solemn duty to execute the same in such manner as will not deprive citizens of those rights guaranteed them by the Constitution and laws. The presumption is that they will act in a cautious and careful manner to the end that the

rights of the citizens will be protected; and for this court to hold that an officer did not have the right to stop a citizen for a violation of the law upon the public highway without having in his possession a warrant of arrest at the time, would in our opinion make a nullity of the law, and greatly endanger the lives and safety of the citizens of this state.

Defendant strenuously complains about the officers placing handcuffs upon him at the time of his arrest. It may have been that the officers were not justified in taking this action, but the manner of handling one who has been arrested is for the consideration of the arresting officer, subject to the pains and penalties of the law for his willful violation thereof.

It is provided by the statutes of this state that an officer has the right to arrest for a misdemeanor without the necessity of a warrant, where the offense is committed in his presence. 22 O. S. 1941 § 196. In construing this statute, we have often held that the officer has the right to approach a car upon the public highway or in a public place and if he observes a violation of the law, he has the right to arrest without the necessity of a warrant. The reason for this holding may be seen in the following cases: Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549; Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Coburn v. State, 70 Okla. Cr. 329, 106 P. 2d 533; Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366; Hutson v. State, 72 Okla. Cr. 61, 112 P. 2d 1109; Hammonds v. State, 73 Okla. Cr. 287, 120 P. 2d 376; Hutchinson v. State, 74 Okla. Cr. 30, 122 P. 2d 395; Brown v. State, 74 Okla. Cr. 246, 125 P. 2d 234; Saffa v. State, 75 Okla. Cr. 19, 128 P. 2d 241; Wirth v. State, 79 Okla. Cr. 59, 151 P. 2d 819.

No constitutional or statutory right of the defendant was violated, and the court did not err in permitting the introduction of evidence giving the facts as above outlined.

It is contended that the judgment and sentence in this case is excessive. The statute which accused is charged with violating, provides that the first offense shall constitute a misdemeanor, and the punishment shall be "by imprisonment in the county jail for a period of time not to exceed one (1) year, or by a fine of not more than Five Hundred ($500.00) Dollars or by both such fine and imprisonment." The punishment assessed in this case was a fine of $250. It may be that this fine would be considered large, under the circumstances of this case, but when it is considered that the jury did not inflict a jail sentence, which it had a right to do, under the statute, and that no error appears in the record, and that the defendant had a fair and impartial trial, we cannot hold that justice demands a modification of the sentence imposed by the jury and the court.

The Legislature evidently enacted this law with the strong desire that those who were under the influence of intoxicating liquor should be prohibited from driving motor vehicles upon the highways of this state, and in the terms of punishment, a wide latitude is given, so that one may receive the punishment which the facts and circumstances of his particular case justify. The jury of the county where the crime is committed, after hearing all the facts and circumstances, is in a better position to assess this punishment than is an appellate court. It is only when this punishment is so excessive that the court may be of the opinion that it was brought about through passion or prejudice as revealed by the record of each individual case, or by reason of error committed in the trial

of the case, that the court may come to the conclusion that justice demands a modification of the judgment and sentence that it will be modified. We do not find the facts in the instant case to come within this rule.

For the reasons above stated, the judgment and sentence of the county court of Kiowa county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.