## ROBERTS et al. v. STATE.

No. A-11527.  April 30, 1952.

On Rehearing June 25, 1952.

(245 P. 2d 759.)

Turner M. King and Carloss Wadlington, Ada, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendants, Oris Roberts and James E. Harrington, were charged by an information filed in the county court of Pontotoc county with the offense of unlawful possession of intoxicating liquor; were tried; convicted; and sentenced to serve six months in the county jail and pay a fine of $500; and have appealed.

The following assignments of error are presented: First, alleged error in overruling motion to suppress evidence. Second, alleged error in the giving of instructions. Third, alleged error in the closing argument of the prosecutor. Fourth, the punishment was excessive.

Each of the defendants testified at the hearing on a motion to suppress evidence. Roberts testified that he was an owner of a filling station and tourist camp on North Broadway, known as the Ada Tourist Camp, in the city of Ada; that the defendant Harrington worked for him at the place selling whiskey; that the building where the whiskey in question was seized consisted of an office room in front, a little room in the middle where Harrington slept, and a small back room. The witness was not present at the time the

officers seized the whiskey. He talked to the officers afterward and they told him they were looking for a stove and adding machine which witness had bought from LeRoy Blankenship.. This conversation was about an hour after the officers had been to his place. His office was a public place in the front of the building. The whiskey belonged to the witness.

Harrington testified that he was employed by Roberts for the purpose of selling whiskey; that he sometimes slept in the middle room of the building; Mr. Jess Lea, a state officer, and three more men came to the place, opened the middle door and told him to call Oris; they did not show any search warrant; they saw the whiskey there and seized it; when the officers arrived the whiskey was in the middle room, the outside door was open but the door to the middle room was closed and the officers opened it and asked for Oris Roberts. When the officers entered the middle room the witness was busy stacking whiskey in the closet.

Jess Lea testified that he was an investigator from the State Bureau of Investigation; that he was investigating a crime that had been committed in Dallas, Texas, and had received information that certain parties in Ada had a part of the stolen property; that he and a Texas officer and a deputy sheriff of Pontotoc County talked to LeRoy Blankenship at Ada, who told them that he had sold a stove and adding machine to the defendant Roberts; that the officers took Blankenship and went to the tourist court operated by Roberts; that no one was in sight around the tourist court but the door to the building was open; that if there was a middle door it was also open; that the officers entered the building and saw Harrington with several bottles of whiskey on the floor of the middle room and Harrington was placing the whiskey in a clothes closet; when the officers entered the room Harrington closed the door to the closet; that the witness asked for Mr. Roberts and told Harrington that they were looking for a stove and adding machine that Roberts had bought from LeRoy Blankenship; the stove was sitting against the wall and was not hooked up, but the adding machine was in the closet where the whiskey was stacked. The officers had no search warrant and went to the place for the purpose of making an inquiry of Roberts as to whether he had purchased a part of the stolen property from Blankenship, as Blankenship had related. The officers did not go there looking for whiskey, did not have whiskey on their minds and only seized it because they saw the whiskey after they had entered the building. Some of the whiskey was in loose bottles and some of it was wrapped in bundles with names and markings identifying the whiskey on the bundles.

Darwin Cummins testified that he was a deputy sheriff of Pontotoc county and accompanied Officer Lea, a railroad detective from Texas, and LeRoy Blankenship to the Ada Tourist Courts where they were seeking to recover some property that had been stolen in Texas and which Blankenship claimed he sold to Roberts. His testimony was substantially the same as that of Lea. In addition he testified that Blankenship saw the stove which had been stolen and pointed it out to them in the building before they ever got out of the car.

We are of the opinion that the building designated as the office under the testimony of the accused was a public place where the public was not only welcome but was invited for the purpose of purchasing intoxicating liquor. A felony had been committed. The officers had a legal right to make an investigation to ascertain where the fruits of the robbery in Texas had been taken. They thus had a lawful right to be at the office. While there is a place where they had a lawful right to be they saw the whiskey and, under the decisions of this court, they had the legal right without a warrant to arrest the person in possession of the whiskey and seize the intoxicating liquor.

Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716; Blair v. State, 75 Okla. Cr. 265, 130 P. 2d 545; O'Dell v. State, 80 Okla. Cr. 194, 158 P. 2d 180.

The second assignment of error is directed at an additional oral instruction given by the court to the jury. At the close of the trial counsel for defendant presented a requested instruction, wherein they asked the court to submit the issue as to whether the search was valid to the jury. The trial court partially acceded to the request of counsel for the defendant and gave instruction No. 7 as follows:

"The Court will instruct the Jury that if the officers went to the place of business of the defendant, Oris Roberts, in an investigation of some stolen property and without a search warrant and while attempting to make an inquiry came upon one of the defendants attempting to hide some liquor, then in that event the officers would have the right to seize the whiskey. However, on the other hand, if they went to the premises for the purpose of searching the same and without a search warrant, then you should disregard the evidence as to the liquor and find the defendants Not Guilty."

After the arguments had been made, and before the jury retired, the trial court stated:

"By the Court: Now, let me have the instructions. Gentlemen of the Jury, there has been considerable confusion come up about the instructions. If you have any trouble after you get out to the Jury room you can come back and get what additional information you might require. I am going to try to make this plain. The officers would have had a right to take the stove and stolen property they were looking for from any person they saw in the possession of the same and they would have had to take their chances as to whether it was the stolen property and they would have to have some reasonable ground— and they said they had reasonable grounds to go to this place in this case. But it is my understanding that if they went to a house and place that was claimed as a residence—it may be the most humble residence in the county. It may not have many windows and doors but it still is entitled to protection under the Constitution as a residence. But that is not the question for you to determine in this case. The question for you to determine is whether they were there to search that place without a search warrant. If they went out there to make an inquiry to ascertain if there was stolen property there and it was the property they were looking for and they didn't have an intention to search the place, then they wouldn't have to have a search warrant to make an inquiry. But, if they went in the house while they were inquiring about the property and they came upon the defendants violating the law by having the possession of more than one quart of whiskey which they are entitled to have, then they would have the right to seize the whiskey.

"If you find from the evidence or have a reasonable doubt thereof that they went out there to search that place without a search warrant, then you will find for the defendants. But, if they went there to inquire about the stolen property,—so far as the stolen property is concerned in this case, this fact alone should have no consideration in this case you are trying now except as hereinabove instructed, and you should not consider that as any evidence in any way against the defendant because it arises in this testimony. The question is whether or not they had the whiskey for the purpose of selling it unlawfully. You can have exceptions."

The giving of instruction No. 7 was an error and the court further erred in giving the additional oral instruction. The legality of a search and seizure is solely a judicial question to be determined by the court and should never be presented to the jury for their determination. Isbell v. State, 78 Okla. Cr. 78, 143 P. 2d 627. However the error was favorable to the accused. The court had previously ruled adversely to them when he denied their motion to suppress evidence. Under the instruction given by the court they were having a second

chance to have this identical question determined. Under such circumstances, even though the instruction which was given was not entirely accurate and was even confusing in some aspects, still we are unable to see any injury resulting to either of the accused on account of the giving of the additional instruction.

We shall consider the last two assignments of error together. Part of the argument of the prosecutor to which objection is made seems to be proper. However, that part of the argument wherein the prosecutor stated:

"Do you want that to go on in Pontotoc County? If you do, then turn them loose. It is your country, it is your children; it is your wife and daughter that are being run down on the highways by drunken drivers,—intoxicated from the liquor that they got from the bootleggers in this county. If you want that to continue, turn these defendants loose. Give them a medal. Did you ever see anyone so brazen? Sitting up there like it was something smart."

seems to us to be solely an appeal to prejudice. The principal thing that causes us to reach this conclusion is the fact that the jury by unanimous verdict assessed the maximum punishment. Each of the defendants testified that they had never been convicted of either a felony or a misdemeanor. Since this was the first offense for each of these men it does not appear to us that the maximum punishment was justified. We are unable to determine anything in the record, unless it was the vigorous argument of the county attorney, which caused the jury to fix the punishment at the maximum.

It is our conclusion that justice would be served by modifying the judgment and sentence from six months in the county jail and a fine of $500 to sixty days in the county jail and a fine of $500.

It is therefore ordered that the judgment and sentence of the county court of Pontotoc county is modified from six months in the county jail and a fine of $500 to a term of sixty days in the county jail and a fine of $500 for each of said defendants, and the judgment and sentence as to each of said defendants as thus modified is affirmed.

BRETT, P. J., and POWELL, J., concur.

### On Rehearing.

PER CURIAM. On rehearing it is urged that the punishment as modified by this court is still excessive as to each of the defendants.

As to the defendant Roberts we feel the punishment as modified to sixty days and $500 is justified under the evidence.

Harrington was only an employee of Roberts, and the county attorney who prosecuted the case has stated in open court to us that he feels that the punishment should be further modified as to Harrington, who he asserts was violating the law for the first time and is no longer engaged in the liquor business.

It is, therefore, ordered that the judgment and sentence as to the defendant James E. Harrington is further modified to a sentence of sixty days in the county jail and a fine of $50 and costs.

Mandate should be issued forthwith.